Thank you, Your Honors. My name is George Knopfler, and I am here to represent the Pellant M.B.L. and very much appreciate this opportunity to be heard by you. I will address a couple of issues, Jerry, by initial remarks and reserve the balance of my time to the extent I have any at the end of this argument. Your Honors, the interesting aspect of this case on appeal and has been touched upon by the briefs but really hasn't been focused on is the fact that the underlying court, the district court, really simply refused to, simply ignored or refused to apply Civil Code 19 to the facts and issues presented. Had the court done so, it clearly should have found 19. Civil Code of the State of California? Yes. And specifically that statute states that every person who has actual notice of the circumstance is sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he may have learned of such fact. Well, Mr. Knopfler, the issue is not whether the insurance companies knew of the administrative claim. It's been the law of California for at least 15 years that where there's a duty to defend a suit, that does not include an administrative action defense. Absolutely. That's always been the case, Your Honor, and that's not the issue. But the issue is, with all due respect, the circumstances here is not the – they're not challenging that they knew about the action, the lawsuit itself. What they're saying is they never really had notice of it. There was no constructive notice of it. No, that's not the position. The position, as I understand it, is it wasn't a tender. A tender means, come and defend me. Well, the – For this suit. For this suit. Not for this administrative action. But that – Does section 19 have anything at all to do with the word tender? No, Your Honor, but that section has been applied by both the One Beacon and the California Shopper's cases to exactly this type of situation, that you have to look at all of the facts and circumstances on the issue of constructive notice to determine if the carriers were on constructive notice of the tender so as to give rise to their duty to defend. But in those cases, the actual suit was being tendered, not an administrative action. So I see those cases as a little different in that the actual suit that was being sought – that coverage was being sought for was tendered, but there was some technical deficiency. It was not a constructive notice of the existence of the suit. Well, what is similar in those cases as well as this one is that the intention to seek the assistance of these carriers was there. Well – In the mind of the insured, but not out of his mouth and in writing to the insured. Certainly it's an issue of fact. If you just look at some of the key – No, no, there's no issue of fact here. I mean, where is there any evidence in the record that your insured tendered in writing or verbally the defense of the suit? Well, we have the intention to do so. I know, but you may – the world is full of good intentions, Mr. Knopfler, but the question is what actions were taken? We know that the RDA was tendered several times. For example, the RDA was – But you agree that the RDA tender is not a tender of a suit. Absolutely, Your Honor. Next. At the same time, it reflects an intention to seek assistance to something directly related to the RDA. The carriers are not blind. They can't simply put their heads in the sand and say the RDAs are not going to morph into a lawsuit. They similarly defended this insured in two other cases, the Lyons case and another case, Your Honor. But, counsel, the suit was tendered to other insurers, though. That's the problem is that your client knew how to do a tender, and it, in fact, did it. So it's hard to say that constructive notice should be good enough when there's evidence in the record that your client actually knew how to tender a suit and didn't do it in this particular instance. Your Honor, the sophisticated insured argument as expressed in one beacon, the notice of the claim is sufficient, irrespective of the sophistication of the insured. So isn't it the notice of the claim at that moment? In other words, you seem to be arguing that if they tender an administrative proceeding, that they have to make an inquiry behind that administrative proceeding and then watch to see if it ends up being a lawsuit. No. I'm not saying that there's a duty of continuing investigation, Your Honor. But there is a duty that once they are aware that circumstances have changed and they know that from the letter that they received from Barber that the suit was actually filed, actually served, and the insured was litigating that case. But so this is the Utica case, and this is maybe the facts, your strongest set of facts. Clearly. So you've sent a total of three letters. Actually, there were Utica got three and the others got two. So, but Utica sends one after the lawsuit has been commenced. No, and however, it doesn't mention the lawsuit. Well, it's very clever. It's interesting. If you look at the three letters, the first two letters say we're denying your RDA claim because it hasn't gone into suit. The third letter says we're denying your claim, but based upon the reasons of our prior two letters, they notably don't want to use words that specifically confirm that they know that the suit is outstanding and they know that we want our assistance. But your client's third letter, which comes after the lawsuit has been filed, doesn't mention the lawsuit. And it obviously is a mistake. If you look at the letters themselves, they weren't prepared properly because on top of the letter, it says request for tender and indemnity, and in the body of the letter, the associate used the same language of the RDA as opposed to the lawsuit. You can't blame this. You'd never blame anything on an associate. You're right, Your Honor. You're right. The letter written by whoever it was written didn't specifically indicate that. But more specifically, Utica is no stranger to this thing. They've litigated these cases before. This insured had problems with these carriers in the past. Their argument that this is an Armstrong election is a red herring. How could it be an Armstrong election with Ace when we're suing them for bad faith, number one? Number two, you can't surmise an Armstrong election based upon mere silence. And even the district court recognized that. The point is, they did not want to acknowledge that they knew about the lawsuit. They weren't the type of carriers like we have in Unigard. We don't know anything about what's going on. We're basically taken advantage of by truck. Wasn't there a carrier to whom you offered, you tendered defense, I think, in Northwest, and then they offered to defend you and you rejected it? Well, there was a long history. Yes or no? No, Your Honor. We accepted, they provided the defense that they offered was with counsel that did not, in the view of my client, have their interests at heart. So it was a qualified defense, Your Honor. So you wanted your own counsel? Under Cumas, and we were entitled to it, yes. And you got it? As to the lawsuit, but these carriers never provided the defense. So you rejected Northwest's offer of defense on Cumas grounds? No. No, Your Honor, we rejected it because there was ongoing disputes between Nationwide and NBL having to do with loans related to other litigation. It was a part of the negotiation between NBL and Nationwide to want their own counsel under Cumas. All right, but you know how to demand tender from Nationwide. Yes. And you know how to refuse tender for whatever reasons, right? Well, that's not the issue with these three carriers. The knowledge of knowing how to tender and how to reject is not at issue here. Here, their point is, well, Your Honor, they cannot take the 2860 approach because they never availed themselves. They're brief. They want to take the benefit of 2860. When they know very well they can't avail themselves of the benefit because they never provided the defense and never paid for it. So it's- Counsel, that brings me to the point of whether or not NBL actually received the full defense from another carrier. It did, and that's the most incredible point about this opinion. It did not. There was- Why not? Well, there was $1.6 million worth of defense fees incurred in the three lawsuits. $775,000 was incurred in Sunnyvale alone. The insured never got the benefit at all. All those fees were incurred. They were responsible to pay those things to the Hamrick firm. But what about the settlement agreement that said the settlement was for all defense costs? The settlement agreement, and again, I don't want to- With the time remaining, I don't want to argue the parole evidence issues as to whether that constituted full payment. We know it didn't. We know, for example- Well, but don't we have to go with the terms of the settlement agreement? But if it says that it includes all defense costs, why wouldn't we take it- the language on its face? Let's stay with that. Let's assume you're absolutely correct. It doesn't include payments of defense fees and costs after the settlement agreement was signed, most notably February, March, April, May, and continuously, where basically Ace paid at a rate of $280, and the insured was required to pay at a rate of $450. So we know the court- Well, the insurance was required to pay the rate that it had negotiated with the attorney that it selected, right? It was sure. The carrier and the lawyers could negotiate that rate under Cumas, but the insured was still responsible to pay the difference in the rate. The insurance company, Ace, because of their agreement, was able to negotiate that. These other carriers never- they don't get the benefit of the $2,860 negotiation. But the case says that if there's a full defense from another insurer, the other insurers are still on the hook for attorney's fees. No case- What California case says that? Of course, because there was no full defense. I agree with Your Honor. If there had been a full defense, this would be a double recovery, but we know it's not. We know that the post- the post-February 2012 fees were not paid. We know that $700,000 of the pre-February bills were not paid. But why would you say that the settlement agreement is a constitute- why would your client, not you- Why would your client sign a settlement agreement saying that the settlement represents payment for all defense costs if that weren't, in fact, the case? Incurred and paid are two different words. And the reasons for the words themselves was to protect Ace from any potential bad faith liability. And that's the words that they wanted to use. Now, obviously, there's an interpretation of whether incurred and paid are two different things. And we would argue, as we have in the brief, on the significance of parole evidence on that issue. And the court didn't want to go there. But I think that under the parole evidence rule, they should have allowed those alternative opinions to come in to play. But even if you take that issue to the side, you don't even delve on that issue of parole. And you only look at what happened afterwards. There's an issue of fact as to whether we received a full defense. Clearly, the February, March, April 2012 bills were not taken into consideration. That was under 2860 that these carriers cannot avail themselves to. And also, Your Honor, what portion of the defense did you not receive? We didn't receive $750,000 worth of defense costs on Sunnyvale, specifically. We received $200,000 of that amount. So you got, as far as indemnity is concerned, Ace paid full indemnity, right? In the settlement agreement? Yes. All right, period. So you got defense as to indemnity. What you're saying is you didn't get full defense as to attorney's fees. We did not receive full defense. Even though the agreement says payment in full of all defense costs incurred by MBL's counsel, Hamrick and Evans, or Hamrick. Yes, Your Honor, based on our interpretation. So your interpretation of that settlement agreement requires our consideration of some parole evidence to vary the term of the agreement. Only as to the pre-February 2012 payments. It doesn't require any parole evidence with respect to the fact that February, March, April, May were not subject to that agreement and were not fully paid. And we didn't receive a full defense as to that. So that's why I'm saying the brief addresses the parole issues that Your Honor is discussing. But it also addresses- Why were defense costs incurred in February, March, April, and May? It was an ongoing lawsuit. We were continuing to defend the lawsuit. There were additional- But why was the settlement agreement then signed before the defense was completed? Your Honor, because it was ongoing negotiations. Ace refused to defend. This was a bad faith lawsuit. And they, at some point in time, came in. And they said, okay, we're going to go ahead and defend. We're going to pay a certain amount for the past. And we're going to make a deal with you on going forward. But they made a deal with the Hammock firm, but the insurance certainly was required to pay the Hammock rate, the 450, which was not egregious and outrageous. But it wasn't the 280 rate that the insurance company wanted to pay and did pay. So, certainly, Ace has the benefit of arguing we paid for whatever was required from our standpoint. We got a release from that. They don't have. They can't avail themselves to that. They were not party to that agreement. And we did not receive a full defense under that agreement. That's our- that's my point. All right. Thank you, Counsel. Good morning, Your Honor. May it please the Court, Paul Killian for Appellee Great American Insurance Company. And I'm splitting time with Mr. Chamberlain. Are there any particular issues you plan to enlighten us regarding? After hearing the discussion, no, Your Honor. Unless the Court has questions, I did not hear anything that gave me concern to respond to. Well, I have a question. On February 12th, 2009, Mr. Barber sends Federal Insurance Company, or he sends your client a letter that says, in close, please find the nudes and lawsuits at E.V. Sunnydale, and it closes the complaint. And the question is asked, have you received the tender yet? And the way I read the complaint, M-B-L-I-N-C, is listed as a defendant. Why wouldn't that tip your client off to the- Because we hadn't received the tender. This is a sophisticated insurer who Great American knew very well. This insurer had tendered three other dry cleaning sites to us. We had responded with a Reservation of Rights letter. We had appointed counsel. We were involved in a dispute at that time in Santa Clara Superior Court on the Kumis issue. So, it was a very reasonable conclusion for my client to make that this insured, that M-B-L did not want to tender to Great American, or Federal, or Utica, because we were in a fight on the Kumis issues. And instead, what they did is they went hunting for another insurer that would agree to pay independent counsel without a dispute. They tried nationwide. And, Your Honor, nationwide did accept the defense. And they appointed the same counsel that Great American, Mr. Noel Edlin, to defend that Great American had put up. And that was rejected. And this is in Mr. Barber's 2011 letter where this is explained that Mr. Hamrick told them that they would defend on their own. So, then they found Ace, and Ace agreed to pay independent counsel. So, this case is really about trying to get around the limitation of 2860. But isn't, well, maybe it is, but maybe it's not about the duty of inquiry. There's no duty of inquiry here. There's no duty to inquiry here because we're in California, which is an all-sums jurisdiction. And it's not uncommon for an insurer to make a selective tender. And that's what was going on here. In addition, there was. They sent you a letter after the lawsuit started that, except for the fact that it only references the administrative proceeding, seems to come pretty close to being a tender, doesn't it? Your Honor, no letter, no second letter was ever sent to Great American. I think you're referring to a letter that was sent to Utica. And again, it didn't attach the complaint. But I'll let Mr. Chamberlain address that. What's your response to opposing counsel's position that his client did not get a full defense? His client did get a full defense. Why? Because the settlement agreement said that they were going to pay all the fees up till February 2012 in full. And then it went on. And the next two paragraphs said that they were going to pay all the fees incurred to the end of the case according to the CUMAS rate. So they got everything they were entitled to under the CUMAS statute. And of course, Mr. Hamrick is only here as independent counsel under the CUMAS statute. So they got everything that they were entitled to. They don't feel that because they got, I think, $280 an hour under Section 2860 of the CUMAS statute. But they had to pay Hamrick $450 an hour. So there's a difference there, $170 an hour. Now, they think that that's not getting a full defense. What's your response to that? Well, the California courts have addressed that issue. And that's the San Gabriel Water case. That's 84 Count Lab 4th, 1230. And in that case, the court said that the fee rates paid to independent counsel chosen by the insured operate collectively to all the insurers. And that the 2860 imposes a single rate limitation on a case that all insurers, whether or not they're defending, can take advantage of. And then that makes sense that that would be the case. You can't take advantage of 2860 and then come in and say later on that your rate was higher. But what if Hamrick won't work for $280? He wants $450, and they want Hamrick. Are you telling them, get somebody else besides Hamrick who will take $280? Yeah, that's the way the statute reads, that 2860. Your candor is admirable. 2860 imposes a limitation. I mean, that quite often can be an issue, whether or not counsel wants to hire that. An independent counsel will take that rate. But that is the way 2860 reads. It's a limitation. If there aren't any other questions, I'll submit. All right. Thank you, counsel. Good morning, Your Honors. Good morning. My name's Kirk Chamberlain. I represent both federal and Utica. So Mr. Chamberlain, you represent Utica. Yes, sir. And so I'll ask you the question about Mr. Barber's letter of February 12th. Why didn't that set off a duty of inquiry? You'd already received, I think, three letters saying that the administrative proceeding was going on. And the administrative proceeding, the facts of the administrative proceeding were the same as those resulted in the lawsuit. Why was there no duty of inquiry? Let me back up, Your Honor. There were two letters from Mr. Barber, two years apart, one in 2009 and one in 2011, in which the first one he advised that the lawsuit had been filed and wanted to know if Utica had received a tender. Mr. Barber was writing that letter as a lawyer in another action to a lawyer in my office in another action, wanting to check behind the scenes. So I'm not even sure that that translates to any kind of notice to Utica. It included the complaint, though. It included the complaint that he sent to my office in a different action. That's true, Your Honor. The other point that's important is MBL nor Mr. Hamrick were ever aware of either letter being sent that they now want to rely on as somehow being a tender. And of course, as is in the record in Mr. Barber's declaration, Mr. Barber did not speak for MBL in any way. So... Does it really matter how the insurance company receives the information? It does. It does, Your Honor. It does specifically because as Mr. Achillean pointed out, tender is required. It's the hallmark of the beginning of an action for an insured. And every single constructive notice case is the insured demanding, albeit with some type of mistake, defense of the matter at issue. In this case, you don't have the insured demanding of Utica, anything with respect to the matter at issue. You have a third part... Matter at issue or is it the underlying facts? I'm sorry? Is it the... They're making a demand with respect to the facts that are exactly the same as a result in the lawsuit. Right, but Your Honor, you must remember again, Mr. Achillean pointed this out. This is a case where there is a long history. Utica was one of the main insurance companies in the other action that we took to the Court of Appeals on the state level and prevailed where Mr. Hamrick was trying to insert himself as counsel and force himself as independent counsel. And we were well aware of that. We ultimately prevailed in that case. And we likewise reasonably believed that Mr. Hamrick, who within two months of the lawsuit, did actually tender to two carriers, Nationwide and Ace, tender the lawsuit. We understood that he was selectively tendering pursuant to Armstrong, where they can control their insurance assets and decide who they want to tender to and to whom that they don't. And specifically in this instance, when he knew very well, similar to Nationwide, that Great American, Federal, and Utica were going to respond as they did in the other case and say, if there's an obligation to defend this lawsuit, we're gonna do so with our panel counsel. We're gonna appoint Noel Edlin. And they rejected that. Another interesting point that I want to emphasize, and Justice Beyer, you raised this. No, Judge Beyer, there's no justice. I'm sorry. There's no justice in the Ninth Circuit. Yes. I'm trying to elevate you, Your Honor. Actually, I'll go on. I lost my train of thought with Judge Beyer's question on, oh, there is no MBL that's out of pocket any money. They talk about MBL having to pay the difference. MBL's not paid a dime, at least on this record that we know of. And in fact, there's no bill by Mr. Hamrick in the record. So there's no way for this court to look at a bill, to look if there was a different rate on this record. And there's certainly no evidence that MBL has paid any money out of pocket. This case is all about Mr. Hamrick wanting more money and trying to get around 2860. I'd like to turn to a minute to the second point, which is the double recovery, or the fact that they received 100% defense. And I would just like to point out in the record the settlement agreement. And the settlement agreement's in the record at ER 219. And specifically, pages 221 and 222 are the paragraphs, again, that Mr. Killian was referring to. And they're certainly the first paragraphs. And this is, by the way, after the language that said there was a full defense. And I'm responding to the argument that post-February, it's something different. Well, it is something different, but it's interesting what it is something different, because from February, March, and April, there is an agreed-upon rate, single rate of 280. And as part of that, MBL specifically waived any 2860 arbitration rights. What page are you on the settlement agreement? Settlement agreement's page four, Your Honor, of the agreement itself, and 222 in the record. Okay. Point me to the words, if you would, please. I'm looking for it, Your Honor, right now. Paragraph D, in further consideration for, and subject to all the terms and conditions provided under this agreement, the parties agree that all invoices through April 2012, and that's the first, I guess, jump in the single blended rate of 280s, represent reasonable fees. So that's MBL saying that it represents reasonable fees and costs incurred in the defense of the environmental claims. And by the way, that's their incurred word that they like to use, because they say it's different than paid, incurred. And they forego any right of arbitration under 2860. Okay, so clearly, they knew what a full defense was, and they were receiving a full defense. And in the next paragraph, and implicit in that, by the way, Your Honor, is. The arbitration could only determine what the going rates were for insurance counsel, not what they had agreed to pay Hamrick. Well, a 2860 arbitration, Your Honor, is when you have a complaining party, such as we do here with Mr. Hamrick, saying he was entitled to more. My regular rate is 450. Okay, that is exactly what arbitration is for, because during the life of the case, right, you, as defense counsel, must take the cumus right, which is the same type of case for the same quality of lawyer in the same location. You reserve your right, as they apparently did with post-April costs, or insurance fees. You reserve your right at the conclusion of the action. You would then must, it's not an option, you must go to arbitration to arbitrate the difference between your cumus rate, if you will, and what your normal, reasonable rate would be. Of course, here, the interesting thing is, there is no such reservation, nor do they refer to a cumus rate or anything else. They specifically talk about agreed-upon rates. Nowhere in this document, which is an integrated document, do they say, we understand you're gonna pay us 280. We're reserving our right as to our rate for 450. They do just the opposite. They waive their right of arbitration. Correct, Your Honor. All right. And unless there's anything further, I will submit as well. All right, thank you, counsel. Thank you. Rebuttal. As I anticipated, Your Honor, they are arguing Armstrong election, that that's the reason why they didn't call us, because they figured, well, we're obviously not gonna want to tender to them, because we've had some problems with them in another case. Even the district court acknowledged that they can't reach that conclusion. There's no facts to support it. Our silence on the Armstrong election does not allow them to assume, infer, or otherwise claim that that was the case. That's why there's a triable issue of fact on that issue. They're using Armstrong throughout their brief to say, well, because we're having disputes, we just didn't want them. They never picked up the phone to call. Utica specifically went out of their way when they said, we're denying this thing on the basis of our prior two letters. They didn't say not because of the suit, because they knew that a suit had been filed. They didn't want to pick up the phone, but they didn't want to lie about it in the letter outright. But they knew that the suit had been filed,  But that's not the test, whether or not they knew that the suit had been filed. The test is whether it was properly tendered under the law. Absolutely. And under the law, the constructive notice also reflects the facts and circumstances which an insured shows his intent to want them involved in this. And that's my point. Going back to the Civil Code, Your Honor, I think you reject as having significance. It does have significance on that specific issue. It does apply in the insurance context. Were there facts to alert them to the fact that we wanted their assistance in this lawsuit? That's what the construct- Did Ron Beacon, your strongest constructive notice case? I think also California shoppers as well. Those two are your strongest cases. And if you look at this district court's decision, they cite three cases, two out of state cases, but they actually support our position because in those cases- What you think is that there was an implied tender based on constructive notice? Yes, there was an implied tender on the constructive notice and the facts indicated the desire to tender this lawsuit and this claim based upon all the facts and circumstances. Certainly it's an issue- I think that that's a triable issue of fact- Absolutely. Sufficient under California law that if there is a triable issue of fact as to whether there was an implied tender based on constructive notice, then the court was wrong in requiring an express tender. That and whether or not under constructive notice, the facts and circumstances showed an intention on the part of the insured to want and to desire them to get involved enough for them to make a reasonable inquiry and pick up the phone and call. They can't assume- Does it have to be an intention of the insured or does it have to be an expressed intention of the insured? It's, there's no case that addresses that issue. I would only go back to the civil code on that as to the reasonable inquiry. What facts and circumstances rise to the level of reasonable inquiry? I think we're there. More importantly, Ron, on this issue, if I just may address the Sam Gabriel decision. That was a case that the difference there was they actually were participating in the defense. What counsel keeps on saying is, well, somehow we waive this and we waive that. We agreed on certain issues with ACE. They don't get the benefit of that release. As to agreed upon rates, that's not necessarily MBL agrees that that's what they're paying Hamrick. They agree that that's what they'll pay, that they'll accept that from ACE. They never, they're not agreeing to accept that from another carrier that's not party to that document. And more specifically, Hamrick is clear that the insured is responsible for these fees. There's nothing in the record to contradict that. Was one beacon in a contribution case? Yes, but the language of one beacon directly talks about specifically the insurer's obligation to the insured with respect to calling them and inquiring as to whether they want their participation or involvement when they have sufficient facts to put them on notice that there's something out there that they may want to participate in. All right, thank you, counsel. You've exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Eaton